Good morning and may it please the court, Sonim Henderson for the appellant, Antonio Montejano. I plan to reserve two minutes for rebuttal and I'll watch my clock accordingly. Here the district court erroneously denied Mr. Montejano's new trial motion because it misread section 1867A to say that a JSSA motion must be filed before a voir dire begins even when a defendant has no way to know before voir dire that the clerk has violated the jury plan. Well, isn't there, doesn't the statute itself provide a way to know in subsection F? Sorry? So 1867F provides pretty broad rights of discovery if it's necessary for a motion such as the one your client brought. Why doesn't that allow to discover it? So, your suggestion, Your Honor, is that every defendant could come in and immediately demand to interview the jury clerk to make sure that the jury plan's been followed without some sort of prima facie showing beforehand? I guess my question is whether that was Congress's contemplation. I must say I didn't read it. I didn't read it that way. I think it would be, I mean, certainly we'd, if that was the system, we'd be, you know, happy with that system and we would, you know. Right. In every case, file a motion and demand to talk to the jury clerk. Well, I wonder what the, whether you could share any of the practice. I mean, is it, does that happen? Do people avail themselves of the right? I mean, 1867F is quite broad that you can't disclose these records unless it's necessary in the preparation or presentation of a motion under this section. I will say, I don't, I mean, in terms of from practice, I can say that it doesn't, it's not something that happens very often. I can say that after, after this case, where we had, you know, we could say to the court, we know there have been, there's been at least one problem. Counsel, it seems to me there are several other avenues for you to raise this issue. And for example, under the Sixth Amendment, a Batson challenge, a Fair Cross Section challenge, an Equal Protection challenge, a habeas petition, there are other avenues. And I guess from your perspective, the problem with those avenues may be that they require a showing of prejudice and the jury pool issue is a different animal. So I'm wondering whether you have preserved any of those other potential avenues of relief. So, Your Honor, I mean, in, well, I'm not sure how available some of those are. Certainly, we preserved the Fifth and Sixth Amendment Fair Cross Section. We made those, we made those arguments and they were denied. And the problem with making them in a case like this, a one-off, right? This is, this is a case where we have... It's because he had a fair jury. No, it's, it's that he can't show a problem with, you can't make out a fair cross section claim from one jury. That's what this court's case law says. That you need, you need to show it over multiple juries. For the Fifth Amendment, you need to show under-representation over a significant period of time. We have, we have a one-off that we know of that we can't, you know, we can't make a showing across multiple veneers. So, a fair cross section, the fair cross section case law doesn't seem to help us here. So, counsel, this is how I look at this case. I don't think Section 1867A applies at all. Because it would be impossible for you to know of this irregularity before voir dire. It's just an impossibility. And none of the cases under this section, or that are cited by either side, really talk about a case such as this one where you just, there was no way to know unless the veneer person, the clerk, had not come forward and admitted it to the judge, Judge Gutierrez. And so, and then he felt, because, you know, obviously, this implicates due process and all sorts of other rights. He came forward and told you, and you did make a Rule 33 motion, right? We did. And you get a new trial if it's in the interest of justice. We do. So, why do you need this 1867? You had a jury clerk acting, you know, out of her line of authority and tampering, basically, with the jury. And then the question is, is it in the interest of justice for your client to have a jury that's been untampered with? Right, and we used, I think, 1867, well, the jury plan. The JSSA, more broadly, came up as a, I think I'd put it as proof, as a demonstration that the interest of justice, this is something that, you know, Congress, everyone agrees is, you know, having a fair jury that's selected without the clerk just taking discretion on themselves to kick people off. Everyone agrees that's necessary for justice. The JSSA shows that. And so we invoke it kind of as the proof of the interest of justice. So. So, and, but, so what did Judge Gutierrez rule on that, or? He called it an end run. An end run. In his mind, 1867A, you know, we have to go through 1867A, and you, you know, to, he read it to be before voir dire begins. Well, I think that's true. I think that is the way the statute, if you look at the legislative history. I mean, I, I, obviously we contest that legislative history only comes in if it's ambiguous, I don't know that the government's even argued it's ambiguous. No, but I mean, 1867, it contemplates the situation where you're really attacking a plant, it's contemplate, it was enacted at a time when you'd look at the veneer and you'd say, it's all white, and so you could make it before voir dire, right? Yeah, I mean, I think it, it, you know, certainly one reading of it would be that it's, it's more focused on the plan itself. I mean, if, if the court is correct that it's, it's before voir dire begins, I think that's really telling people to go read the jury plan. Counsel, I, I'm just thinking here about whether you have brought to us the pure rule 33 question, I read your brief as relying entirely on the JSSA. I, I, without having the brief in front of you to cite the exact page, I can do it on rebuttal. We, we certainly discuss rule 33 and talk about this as, as I think in the terms that I've described it, that rule, you know, we've made a rule 33 motion in the interests of justice and the JSSA violations were, were the proof that there were interests of justice at play. The other question I have is this, the, the legislative history, not the part cited by the parties, there is some material in there that talks about harmless error, that, that a jury pool doesn't have to be perfect and they use an example like there are 10,000 people and there's a problem with a hundred of them. Why, why wouldn't that sort of thinking carry over even in the rule 33 context? I'm not, I'm not sure I remember that provision, but in terms of, of harmless error, I think it makes sense, you know, if you're talking about sort of a statistical examination of this and like, you know, is, is the jury statistically a perfect cross section, it makes sense to me that you would have some play in there and some harmlessness. But if you're talking about a jury clerk actually... We're dealing with distance, right? I mean, that was the issue here. No, it, I mean, distance was the first cut because they're, they're, they're dealing with these subsistence jurors, but it's not distance alone because there were seven subsistence jurors. If it was just distance, you would have cut all seven. There was some reason they cut four and not the other three. And then when you see the stuff that came out in Discovery later about it being four minorities, that's, I think, even more troubling than just, I mean, the clerk took discretion to choose which four of the seven. And without further discovery, without knowing more, we can't say exactly why the clerk did that, but it is troubling. And I think it's something that should be addressed. I'm very much almost out of time. I'd like to hold on to my minute if I can. Good morning, Your Honors. Ronnie Katzenstein for the United States, and may it please the court. The district court's interpretation of the time limit in the Jury Service and Selection Act has been affirmed by this court in Handy and in James and every other circuit that has looked at the question. It is consistent with the act as a whole, in particular, the exclusive remedy provision, and it's consistent with the policy underlying the act, namely to promote efficiency and safeguard judicial resources. And finally, it is explicitly endorsed by the act's legislative history. Right. There is, are there any cases that talk about a situation where there is no way of knowing what the jury had somehow been tampered with before? I mean, I honestly do not think this is the correct avenue. I mean, I understand why it was it was raised in this way, but it was inconsistent, it is inconsistent with the jury plan for the central district. But in a case, and in none of the cases that are cited or deal with this section, talk about the situation that occurred here, where there is no way to know that some jury clerk is off on a frolic and detour of her own and just eliminating four minority subsistence potential jury members from the jury. That's, that's kind of concerning. Well, Your Honor, the case, the 11th Circuit case, Paradis, I hope I'm pronouncing that correctly, specifically deals with the situation in which the information on which the claim is made is known only after the fact. And it says once voir dire begins, the Jury Selection Act challenges are barred, even where the grounds for the challenge are discovered only later. And beyond that, in the Handy case, although my colleague suggests that we can't know when the information came to the attention of the court, to the parties in the court. In fact, if you read this court's decision in Handy, it's very clear that the triggering act, which brought about the challenges, was the affidavit of a juror, which was submitted after the verdict was entered. The affidavit saying that another juror was mentally incompetent. The decision makes clear that having received that affidavit, the court then looked at the questionnaire and provided the questionnaire to the parties. So again, in that case, we have a situation where the information only becomes known after the time to bring the Jury Selection Act. So what are the avenues of relief for a person in this situation? I think, Your Honor, hit them right on the head. There are, if you can meet the time qualifications and the other requirements of Rule 33, you can present a constitutional claim in that way. You have mechanisms through collateral attacks to present a claim that way. I also. On habeas, for example, or? I'm sorry? On a habeas claim. And you could bring it on a habeas claim. So do you agree or disagree with counsel's statement that this is also an appeal concerning Rule 33? I don't agree with that. There is the brief clearly is a brief about the interpretation of 1867. But I want to address Rule 33, Defendant's Rule 33 claim even so. Because I, the government's position, of course, is what the court has just indicated, that those have to go through 1837, 1867, excuse me. But even if it didn't, even a standalone Rule 33 claim would have to satisfy the requirements of Rule 33. Rule 33 has two components, one based on newly discovered evidence and one other grounds. And other grounds claim has to be brought within 14 days of the verdict. That's not what happened here. That's why defendant is asserting that he had newly discovered evidence. But this court has said explicitly that newly discovered evidence for purposes of Rule 33 must go to the elements of the offense. It must be the type of evidence that could, would likely result in an acquittal. That's not what you have here. And in Hanum, this court's case Hanum, ineffective assistance of counsel information was made available to the defendant only after the verdict. He said, the defendant there said, that's newly discovered evidence, I should be able to come within the strictures of that component of Rule 33. This court said no in Hanum. That's not the type of evidence that satisfies Rule 33. I also wanted to address what I inferred was a concern of the court that there may be, and I inferred this from Judge Graber's reference to the more stringent requirements for a constitutional claim. There may be cases that fall in the middle. That's right. There may be cases where you can't bring a Jury Selection Act claim because the time has passed, and you're not, you're showing for a Sixth Amendment or a Fifth Amendment claim isn't sufficient. We're in the middle ground, and there may be a question you can't address that. And I would suggest that that is analogous to what happens in cases involving juror misconduct. If there is juror misconduct, even egregious juror misconduct, Rule 606B prohibits the court from basing, invalidating a verdict just on an affidavit from a juror, even if the misconduct involves being drunk in the jury room or dealing drugs in the jury room. That's the Tanner case from the Supreme Court. The court has also recognized that some cases rise to the level of a constitutional violation involving racial bias, and that is so significant that we will make an exception. We make an exception to Rule 606B. So in that context as well, we have that same situation. Some claims come in, but some will not come in because there are other concerns, finality, and those sorts of things. But if they are sufficiently egregious, as here, sufficiently egregious to bring a Sixth Amendment claim, the defendant may do that. The defendant has access to that. That's a way to address the defendant's concerns. I'm concerned about the district court's reasons for disallowing the deposition of the jury clerk. I mean, it just seems to me that, I mean, if we were going to determine whether there was prejudice in any way, we would need to understand what the jury clerk was doing and why they were doing it. Yeah, understood, Your Honor. Of course, the parties were allowed to propound questions and didn't do that. So it was just the question of, I believe it was merely the question of live testimony from the jury clerk, but they were afforded the opportunity to propound questions to the clerk. And I would also point out that it is also the case that the, forgive me just one moment, here, after receiving discovery, and there was abundant discovery, I think over 500 pages of discovery under 1867F, it was provided, over 500 pages were filed with the court. Here, the defendant conceded the produced records in this case reveal no direct evidence of discriminatory intent, and therefore defendant has no basis to allege that any person acted with discriminatory intent. And that's at ER 46. So I think the court here afforded the defendant all kinds of process. The court is certainly to be commended for bringing this deviation to the attention of the parties. Everybody recognized it was a deviation. The parties were given an opportunity to address it. When the court denied it on procedural grounds, he made sure that the parties received discovery so they could bring constitutional claims if those were warranted. And they were all denied. But there's no error here, Your Honor. I think if there are no other questions, not for me. Thank you. Thank you, Counsel. Just quickly, Your Honors. In terms of Judge Graber's questions on Rule 33, at AOB 27 and at the reply brief at 15 through 17, we talk about Rule 33, if you want to see what we've done there. In terms of the government's claim just now that we were permitted to propound questions to the jury clerk, that is incorrect. We were allowed to present questions to the Chief Deputy of Operations, who is not the jury clerk, but our request to question the jury clerk were specifically denied. And then in terms of us admitting there was no direct evidence of racial discrimination, I mean, we hadn't talked to someone we couldn't say, this person has admitted there's racial discrimination. We did, in the same ER, talk about how there was indirect evidence. And that should be enough for the court to go forward with. So there's... I have a question. The court, the district court did an alternative holding. You said when it was procedurally barred. Right. Alternatively, even if the court were to consider the merits of the JSSA challenge, the result would be the same. Montejano has not shown that the wrongful exclusion of the subsistence jurors was qualitatively or quantitatively substantial. And what I'm wondering is whether quantitatively substantial is akin to a kind of harmlessness notion that's built into the analysis of whether this jury actually was tampered with. I took the court to be referring to the numbers and just some sense that if it's less than 7 percent, it's not quantitatively. He said qualitatively or quantitatively. Yeah. And then in terms of qualitatively, I think that's based on his incorrect finding that the subjective criteria used by the jury clerk were a geographic relationship to the courthouse. That there was no basis for that finding at the court. If you look at ER 99 through 101, you can see the court discussing at an earlier hearing how it couldn't accept the government's claim that this was geographic because how could we know without... How could we know? And then the government, yes, we couldn't know without discovery. And there'd been no discovery. Would you address, like, what are... Why is this prejudicial error in your view? I think, I mean, I think this court has treated jury plan violations as, like, per se prejudicial. And I think it's akin to structural error. If you don't have a fair draw on your jury, you didn't have a fair jury, you didn't have a fair trial. Does anyone have any further, no further questions? Thank you very much. Thank you very much, counsel. U.S. v. Montejano will be submitted.
judges: GRABER, WARDLAW, JOHNSTONE